IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXIA STIPA,<br><br>        Plaintiff,<br><br>v.<br><br>THOMAS JEFFERSON UNIVERSITY<br><br>d/b/a THOMAS JEFFERSON<br><br>UNIVERSITY HOSPITAL,<br><br>        Defendant. | CIVIL ACTION<br><br>NO. 24-5431 |

## DECLARATION OF ALEXIA STIPA

I, Alexia Stipa, declare under penalty of perjury that the following is true and correct:

1. I am the Plaintiff in this action. I completed all coursework and over 1,000 hours of clinical training required for a Master's degree in Community and Trauma Counseling at Thomas Jefferson University; however, the University has refused to confer the degree, and the matter remains in dispute. My education and clinical training allow me to professionally document and evaluate patterns of harassment, retaliation, and coercion. My professional background informs every statement herein.

2. I never authorized my former attorneys to settle or dismiss this case. Each time I was pressured to accept a deal, I explicitly refused. I made clear - both verbally and in writing - that I would not even consider settlement until my full evidentiary record was returned to me. The proposed terms were coercive, one-sided, and failed to provide any meaningful relief while demanding an unlawful waiver of my and my child's rights.

3. My attorneys lost the original hard-copy file, which contained thousands of pages of evidence substantiating my ADA and Rehabilitation Act claims. The loss of that material rendered competent representation impossible and prejudiced my case.

4. Months later, a partial electronic subset of that file was transmitted to opposing counsel without my knowledge or consent, while the complete original remained missing. This unauthorized disclosure and the disappearance of the original record deprived the Court of the true evidentiary foundation of this matter.

5. In August 2023, I attempted to withdraw from Fall 2023 classes. My online portal was blocked from processing the withdrawal, and I was subsequently billed despite non-enrollment. Internal communications later revealed that administrative codes were altered to restrict my access.

6. My academic record refutes any suggestion of poor performance. I successfully passed the National Counselor Examination (NCE) - a credential available only to graduate students in their final semester who are nominated by their universities, or to licensed clinicians. The program had also acknowledged an internal grading error affecting my practicum evaluation that should have been corrected long before any academic dispute arose. Despite meeting the eligibility criteria, I was denied entry into the honor society without justification.

7. The so-called settlement proposal offered nothing that the University was not already obligated to correct (including the grade error, improper billing, and basic compliance with disability law). It demanded that I waive all present and future legal rights for both myself and my minor child. I rejected these terms unequivocally, in writing and on record.

8. Recorded conversations and contemporaneous system-generated transcripts capture my former counsel engaging in coercive conduct - including, but not limited to, yelling, threats, and misrepresentation of privilege. These recordings establish that no genuine consent was ever given to any settlement or dismissal.

9. The June 9, 2025 calls were recorded at my husband's business office in Pennsylvania by the office's camera system. The system continuously records audio and video data twenty-four hours a day, seven days a week, and automatically retains recordings for thirty days. The recorded excerpts begin after Attorney Rocco Iacullo advised that allowing my mother to join the call would waive attorney–client privilege. Prior to the start of the recorded portions, Mr. Iacullo had been urging me to accept proposed settlement terms, repeatedly objecting to my request that my mother be present, and expressing frustration with my continued refusal to agree. The recording captures the continuation of that exchange after his statement regarding privilege. During this period, Mr. Iacullo maintained control of the conversation and continued to press for my agreement. For each recording, the platform automatically generated contemporaneous transcripts. The timestamps correspond with the metadata reports, which verify authenticity. No manual editing occurred.

10. During a prior proceeding, it was indicated that, in the event my statements conflicted with those of my attorneys, the Court might rely on counsel's representations. That experience reinforced the importance of creating this declaration as a clear, sworn record supported by contemporaneous documentary and digital evidence.

11. The April 2025 calls were made in Delaware, a one-party-consent jurisdiction. Because only one participant's consent is required under Delaware law, the recordings were lawfully obtained from within my residence. The discussions had already been in progress before recording began, and therefore the recordings do not capture the conversations in their entirety. Recording commenced only after the dialogue became increasingly coercive. During these calls, Attorney Rocco Iacullo, after multiple unsuccessful efforts to secure my agreement to the proposed settlement terms, added Attorney Andrew Favini to the line - this was my first introduction to Mr. Favini. His inclusion appeared intended to reinforce pressure after prior attempts had not succeeded. Mr. Favini joined and disconnected several times using a virtual number, causing brief interruptions that are audible on the recordings and resulted in portions of the discussions going unrecorded. The recordings are offered solely to demonstrate attorney conduct relevant to the absence of informed consent to any settlement.

12. The call logs, recordings, transcripts, and metadata reports align consistently in date, time, and duration. Each metadata report identifies the file path, creation and modification timestamps, and the corresponding digital hash value verifying the authenticity and integrity of the underlying recordings and transcripts.

13. The evidence described above demonstrates that the dismissal of this case occurred under circumstances involving mistake, misconduct, and extraordinary conditions. Vacating the dismissal is necessary to ensure an accurate evidentiary record and to restore a fair opportunity for judicial review.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of October, 2025, at Wilmington, Delaware.

Alexia Stipa