IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXIA STIPA, <br><br> *Plaintiff,* <br><br> v. <br><br> THOMAS JEFFERSON UNIVERSITY d/b/a THOMAS JEFFERSON UNIVERSITY HOSPITAL, <br><br> *Defendant.* | CIVIL ACTION <br> NO. 24-5431 |

**Pappert, J.**                                          **November 7, 2025**

## MEMORANDUM

Practicing law is challenging and made more so by a difficult client.  Alexia Stipa redefines difficult.  She agreed to settle this case and for reasons unknown, but certainly not honorable, refused to sign the settlement agreement.  She ignored her lawyers' many efforts to help her and on the rare occasions they could get her on the phone, surreptitiously recorded the conversations, potentially violating Pennsylvania's wiretap law.

To protect her interests, counsel moved to vacate the Court's dismissal of the case, predicated on the settlement, before expiration of the ninety day period under the Local Rules.  At wits end, they also sought to withdraw.  The Court held a hearing where it experienced first hand Stipa's mendacity but, given her new found *pro se* status, allowed her to file her own motion to vacate and granted her a hearing on it.  She filed the motion and submitted her best "evidence", to include the shady recordings.  She then failed to attend the hearing.

1

Alexia Stipa lied to, and secretly recorded, her lawyers, treating the federal court as a playground for her shenanigans. Stipa's lawyers did all they could do to help her, but could not save her from herself. The Court denies her motion.

I

On October 10, 2024, Alexia Stipa, represented by Rocco Iacullo and Andrew Favini of Disability Rights Pennsylvania, sued Thomas Jefferson University, alleging discrimination on the basis of disability in violation of the Americans with Disabilities and Rehabilitation Acts. (Dkt. No. 1.) Stipa claimed Jefferson did not accommodate her alleged disability and failed to give her the grades she thought she deserved. *See* (Compl. ¶¶ 70–77). On March 27, 2025, Michael Morse, Jefferson's counsel, sent Iacullo and Favini a proposal to settle the case. (Mar. 27 Email from Morse to Iacullo, Dkt. No. 31-1.) Iacullo emailed Stipa on April 1 that it was in her "best interest" to accept. (Apr. 1 Email from Iacullo to Stipa, Stipa's Flash Drive.)

On May 23, Jefferson moved for summary judgment, (Dkt. No. 23), which Iacullo and Stipa agreed to discuss after the holiday weekend, *see* (May 24 Email from Stipa to Iacullo at 3, Dkt. No. 31-18). Iacullo told Morse on May 27 that he would talk with Stipa that day and follow up after he and Stipa spoke. *See* (May 27 Email from Iacullo to Morse, *In Camera* Ex. 2). Iacullo and Stipa had that discussion, during which Stipa raised concerns about two failing grades on her transcript. *See* (Oct. 17 H'rg at 12:6–22, Dkt. No. 26). Iacullo proposed that Jefferson issue her a letter explaining those grades. Stipa agreed. *See* (*Id*. at 12:10–13:3).

That same day, Iacullo gave Morse his proposal with respect to his client's grades and transcript. *See* (*Id*. at 12:24–25). Two days later at 3:26 p.m., Morse

2

responded with an updated offer consisting of four substantive items, pursuant to

which Jefferson would:

    (1)    Change Stipa's grade for CTC 701 Practicum from an "F" to a "B";

    (2)    Redact Stipa's Fall 2023 semester;

    (3)    Issue a letter to Stipa explaining why she received failing grades in CTC 792 and CTC 793; and

    (4)    Release Stipa from the $15,364 she owed Jefferson in tuition and fees for the Fall 2023 semester.

*See* (May 29 Email from Morse to Iacullo at 2, Dkt. No. 31-2). After receiving that

email, Iacullo called Stipa to explain the offer. Stipa agreed to it. *See* (Oct. 17 H'rg at

13:4–14:19).

On May 29 at 8:25 p.m., Iacullo told Morse that Stipa "will accept all of the

terms in Items 1-4 as a resolution to this matter." *See* (May 29 Email from Iacullo to

Morse at 7, Dkt. No. 31-3). The next day, Morse sent a "recap" of Jefferson's offer to

Iacullo and Favini. *See* (May 30 Email from Morse to Iacullo at 2, Dkt. No. 31-3). In

response, Iacullo stated that "[w]e have an agreement on all of the terms and conditions

listed below in your email." *See* (May 30 Email from Iacullo to Morse at 1, Dkt. No. 31-

3). Iacullo then told the Court the case settled, *see* (May 30 Email to Court, Stipa's

Flash Drive), and on June 2 the Court dismissed Stipa's suit with prejudice pursuant to

Local Rule of Civil Procedure 41.1(b), (Dkt. No. 19).

On June 3, Morse sent Iacullo and Favini the draft settlement agreement. (June

3 Email from Morse to Iacullo at 5, Dkt. No. 31-5.) Paragraph 1 of that agreement

listed the four agreed-upon points. *See* (Draft Settlement, *In Camera* Ex. 27).

Iacullo asked Stipa on June 4 and 6 to discuss with him the draft settlement agreement. *See* (June 4 Email from Iacullo to Stipa, *In Camera* Ex. 8); (June 6 Email from Iacullo to Stipa, *In Camera* Ex. 9). He had a lengthy call with Stipa and her mother Frances on June 9. Stipa secretly recorded the call between the parties, all of whom were in Pennsylvania. At one point Iacullo told Frances Stipa:

> Alexia and I were in agreement according to my notes and our conversations about what the substantive part of the agreement was about. We were in agreement . . . . I told their counsel that we had an agreement in principle on the subject matter in Paragraph 1.

(June 9 Recording V7 at 3:51–4:37, Stipa's Flash Drive.)[1] At no point during the call did Stipa disagree with or refute that statement.

Between June 9 and October 17, Iacullo repeatedly tried to discuss the settlement with Stipa:

- On June 9, he emailed Stipa proposed tweaks to the release language in the agreement. *See* (June 9 Email from Iacullo to Stipa, *In Camera* Ex. 11.)

- On June 10, he asked Stipa if she had received his June 9 email. (June 10 Email from Iacullo to Stipa, *In Camera* Ex. 12.)

- On June 17, he asked Stipa again about the June 9 email, telling her to let him know "as soon as possible if you agree with the proposed changes." (June 17 Email from Iacullo to Stipa, *In Camera* Ex. 12.)

- On June 25, he reiterated that Stipa "had previously agreed to all terms in paragraph 1 of the draft written agreement." (June 25 Email from Iacullo to Stipa, *In Camera* Ex. 14.)

---

[1]    Stipa produced seven different snippets of the June 9 call, each labeled with a number. The Court cites the recordings based on Stipa's numbering.

- On June 26, he emailed Stipa that she did "not have 90 days to make a decision"[2] and so he "need[ed] your decision ASAP." (June 26 Email from Iacullo to Stipa, *In Camera* Ex. 14.)

- On July 8, he left Stipa a voicemail and emailed her about documents she requested. (July 8 Email from Iacullo to Stipa, *In Camera* Ex. 17.)

- On July 10, he emailed Stipa a letter regarding the ninety-day dismissal deadline. (July 10 Email from Iacullo to Stipa, *In Camera* Ex. 17.)

- On July 16, he told Stipa that he needed her input "immediately." (July 16 Email from Iacullo to Stipa, *In Camera* Ex. 18.)

- On August 4, he emailed Stipa that he would move to vacate the dismissal order and withdraw as counsel if she didn't respond and urged her to "let me know ASAP" if she "decided to accept the settlement agreement."[3] (Aug. 4 Email from Iacullo to Stipa, *In Camera* Ex. 19.)

- On August 18, he emailed Stipa his August 15 motion to vacate the case's dismissal and withdraw as counsel. (Aug. 18 Email from Iacullo to Stipa, *In Camera* Ex. 21.)

- On August 29, he sent Stipa Jefferson's response to his motion, warned her that she might "lose the right to ever reinstate this matter," and said it was "imperative that you respond to us immediately to advise whether you will sign the written settlement agreement." (Aug. 29 Email from Iacullo to Stipa, *In Camera* Ex. 22.)

- On September 24, he emailed Stipa about her availability for a hearing on his motion. (Sep. 24 Email from Iacullo to Stipa, *In Camera* Ex. 24.)

- On September 29, he emailed Stipa the initial date of the hearing. (Sep. 29 Email from Iacullo to Stipa, *In Camera* Ex. 26.)

---

[2]      Prior to this email, Iacullo warned Stipa on June 25 that she only had ninety days to reinstate the case under Local Rule 41.1(b) and failing to do so would "forever lose your right to reinstate or refile." (June 25 Email from Iacullo to Stipa, *In Camera* Ex. 14.).

[3]      Iacullo forwarded this email on August 6 to Frances Stipa, asking her to help "in effectuating Alexia's receipt and response to my messages." (Aug. 6 Email from Iacullo to Frances Stipa, *In Camera* Ex. 20.) She never responded.

Stipa never responded to any of these emails.

On October 17, the Court held a hearing on Iacullo's motion. (Dkt. No. 25). Under oath, Stipa—whom the Court ordered to attend—accused her attorneys of settling against her wishes, lying to the contrary and bullying her. *See* (*Id.* at 5:25–6:2, 9:1–12:5, 45:17—24, Dkt. No. 26). She also said she intended to sue them for malpractice and had evidence to support her claims. *See* (*Id.* at 9:1–12:5, 15:6–16:2). Iacullo contested everything she said. *See* (*Id.* at 12:6–13:13, 14:15–20).

The Court granted Iacullo's motion to withdraw, leaving Stipa to represent herself. *See* (*Id.* at 8:14–21, 46:3–47:6). The Court then scheduled an evidentiary hearing based on Stipa's availability for November 3 at 10 a.m, *see* (*Id.* at 49:22–50:13), and allowed her to file her own motion to vacate, along with any evidence which could support it. (Dkt. No. 25). Stipa filed her motion and supporting materials on October 27, (Dkt. Nos. 28–31),[4] and Jefferson responded on August 30, (Dkt. No. 32).

On November 3, the Court held the hearing, which Stipa skipped. (Dkt. No. 34). The Court's Deputy called Stipa twice using the telephone number she provided previously and left her a message. The Court waited over forty minutes for her to show and has not heard from her since.

## II

Local Rule 41.1(b) provides that a dismissal order "may be vacated . . . for cause shown, upon the application of any party served within ninety (90) days of the entry of such order." As the movant, Stipa bears the burden to show good cause. *Thomas v.*

---

[4]    Stipa provided the Court with a flash drive of her "evidence," some of which isn't on CM/ECF. The Court cites the docket number if evidence is on CM/ECF. Otherwise, the Court cites to Stipa's flash drive or the documents Iacullo provided for *in camera* review.

*Univ. of Pa.*, No. 6-1916, 2007 WL 2891739, at *2 (E.D. Pa. Oct. 2, 2007).  Federal Rule

of Civil Procedure 60(b) provides six grounds for good cause.  *Sawkwa v. Healtheast,*

*Inc.*, 989 F.2d 138 (3d Cir. 1993).  Stipa claims that Rules 60(b)(1), (3), or (6) apply.  *See*

(Pl.'s Mem. of L. at 1, Dkt. No. 28).  None do.

Under Rule 60(b)(1), courts may grant relief from a final judgment based on

"mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Stipa

alleges none of that, accusing her lawyers instead of intentional misconduct—namely

settling the case without her consent and bullying her.[5]  But "an intentional

commission cannot be characterized as an excusable mistake, inadvertence, or neglect."

*See Proj. Mgmt. Inst., Inc. v. Ireland*, No. 03-1712, 2006 WL 2818462, at *3 (E.D. Pa.

Sep. 28, 2006) (citation modified) (citation omitted).

Rule 60(b)(3) requires fraud or misrepresentation "by an opposing party."  Stipa

argues only that her lawyers, not Jefferson's, acted fraudulently.  *See* Fed. R. Civ. P.

60(b)(3); *see also Advanced Fluid Sys., Inc. v. Huber*, 381 F. Supp. 3d 362, 374 (finding

---

[5]     Stipa also contends that Iacullo and Favini lost her "original file."  *See* (Mot. ¶ 2, Dkt. No.
30).  It's unclear what that means or why it matters.  In any event, Iacullo continually provided
Stipa with documents related to her case and offered to send her more before and after the May 30
settlement.  On April 4, Stipa told Iacullo for the first time that she had not yet "received my
documents in the mail."  (Apr. 4 Email from Stipa to Iacullo, Stipa's Flash Drive.)  By May 24, she
confirmed she did.  (May 24 Email from Stipa to Iacullo at 3, Dkt. No. 31-18.)  In addition to those
documents, Iacullo sent Stipa more via email on May 21.  *See* (May 21 Email from Iacullo to Stipa at
1, Dkt. No. 31-18).
       Stipa then on July 8 randomly demanded that Iacullo send her "a full physical copy of my
client file."  *See* (July 8 Email from Stipa to Howard, *In Camera* Ex. 16).  Within an hour of that
email, Iacullo called Stipa, left her a voicemail, and emailed her to clarify "what documents you are
requesting as you did not previously request your entire client file."  *See* (July 8 Email from Iacullo
to Stipa, *In Camera* Ex. 17).  Iacullo told Stipa that he had provided her "the initial set of documents
. . . back in 2023."  (*Id.*)  Stipa never responded to Iacullo's voicemail or email or clarified what
documents she wanted.
       Despite that, Iacullo emailed Stipa on July 16 a hyperlink to "a copy of your entire case file"
and told her to "let me know if you have any issues accessing the link right away."  (July 16 Email
from Iacullo to Stipa, *In Camera* Ex. 18.)  She never did.  *See Andrews v. Time, Inc.*, 690 F. Supp.
362, 364 (E.D. Pa. 1988) ("Neither ignorance nor carelessness on the part of a litigant or his attorney
provide grounds for relief under Rule 60(b)(1).").

that Rule 60(b)(3) does not apply to one's own attorneys); 11 *Wright & Miller, Federal Practice & Procedure* § 2864 (3d ed. 2018) (same).

Rule 60(b)(6) is a "catch-all" exception. *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014). "Relief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *Sawka*, 989 F.2d at 140. That relief "generally requires that petitioners make 'a more compelling showing of inequity or hardship' than normally would be required to reopen a case under subsections (1) through (5)." *Landano v. Rafferty*, 897 F.2d 661, 682 (3d Cir. 1990).

Good cause exists under Rule 60(b)(6) when an attorney settles a case without a client's express authorization. *See, e.g.*, *Vengjeli v. Banks*, 668 F. Supp. 3d 400, 406 (E.D. Pa. 2023). Pennsylvania law is "quite clear" that an attorney must have a client's express authority to settle. *Rothman v. Fillette*, 469 A.2d 543, 545 (Pa. 1983); *Tiernan v. Devoe*, 923 F.2d 1024, 1033 (3d Cir. 1991). Pennsylvania has a rebuttable presumption that "a settlement entered into by an attorney has been authorized by the client." *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 536–37 (E.D. Pa. 2015) (quoting *Rockey v. Big Spring Sch Dist.*, 699 A.2d 1331, 1334 (Pa. Commw. Ct. 1997)). If challenged, the court must find that the attorney had express authority to settle. *Vengjeli*, 668 F. Supp. 3d at 407 (citation omitted).

Iacullo credibly explained that Stipa expressly authorized him to settle, *see* (Oct. 17 Hr'g 12:6–22, 13:4–13, 14:15–19), and the evidence—including everything Stipa submitted—corroborates his statements. Iacullo and Stipa agreed on May 24 to discuss the case after the holiday weekend. (May 24 Email from Stipa to Iacullo at 3.)

Iacullo told Morse on May 27 that he and Stipa would speak that day.  *See* (May 27 Email from Iacullo to Morse).  Iacullo said they did, and Stipa agreed to ask Jefferson to issue her a letter explaining two failing grades on her transcript.  *See* (Oct. 17 H'rg at 12:6–22).  Iacullo sent that proposal to Morse, *see* (*Id.* at 12:16–25), who incorporated it into the May 29 offer.  *See* (May 29 Email from Morse to Iacullo at 2).  Iacullo then called Stipa to explain its terms.  She accepted.  *See* (Oct. 17 H'rg at 13:4–10).  Iacullo conveyed Stipa's acceptance to Morse on May 29 and updated Stipa about the agreement on May 30.  *See* (May 29 Emails at 1); (May 30 Email from Iacullo to Morse).  Stipa never responded to Iacullo or refuted her agreement.

Even Stipa's "best evidence," the June 9 recording,[6] supports Iacullo's account. Iacullo told Frances Stipa that he and Alexia "were in agreement . . . about what the substantive part of the agreement was about."  (June 9 Recording V7 at 3:51–4:37.)  He said they "had an agreement in principle on the subject matter in paragraph 1."  (*Id.*) Paragraph 1 of the draft agreement contained the four points Morse sent Iacullo on May 29, which Iacullo said Stipa "will accept."  Stipa never disagreed.  *See* (May 29 Email from Iacullo to Morse at 7).  And Iacullo emailed Stipa on June 25 that she "had previously agreed to all terms in paragraph 1 of the draft written agreement."  (June 25 Email from Iacullo to Stipa.)  Stipa never refuted it.

If Stipa did not expressly authorize her lawyers to settle the case on May 29, she had countless chances over several months to tell them that.  She could have responded

---

[6]    Stipa potentially violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act by recording this call without Iacullo's knowledge or consent.  She admits she was in Pennsylvania, *see* (Decl. of Alexia Stipa ¶ 9), where Iacullo was as well.  The Act makes it a third-degree felony to intentionally intercept wire, electronic, and oral communications.  18 Pa. Stat. & Cons. Stat. Ann. § 5703.  All parties must consent to the interception.  *Id.* § 5704(4).  Iacullo never did.

to any of Iacullo's numerous emails to her, many of which conveyed urgency, telling Stipa to respond "ASAP" or "as soon as possible" or "immediately." *See* (June 17 Email from Iacullo to Stipa); (June 26 Email from Iacullo to Stipa); (July 16 Email from Iacullo to Stipa); (Aug. 4 Email from Iacullo to Stipa); (Aug. 29 Email from Iacullo to Stipa). She never did. *See Taylor v. Chevrolet Motor Div. of Gen. Motors Corp.*, No. 97-2988, 1998 WL 288434, at *3 (E.D. Pa. June 3, 1998) (citation omitted) (finding that Rule 60(b)(6) doesn't apply where the movant is at fault).

Finally, Stipa repeatedly lied to the Court under oath. She said she never authorized Iacullo to settle her case. *See* (Oct. 17 H'rg at 11:25–12:5; 14:20–15:12). Her lawyers' statements, all corroborated by the paper trail, expose her prevarications. She swore that the June 9 call would "prove[] that [she] did not accept any offer and that [she] was bullied into" accepting. *See* (*Id.* at 15:6–12). The Court listened to the entire call. Her lawyers were admirably patient while they tried to work through her newfound and demonstrably insincere "concerns," and didn't flinch when she threatened to sue them for malpractice. And she kept mum when Iacullo reminded her and her mother she had agreed to the settlement's terms. She said she told Iacullo on May 30 that she "was not agreeing to anything." *See* (*Id.* at 26:4–7). That too is a canard. She represented, falsely, that she had "documentation" that proved "beyond a reasonable doubt" that Iacullo was lying. *See* (*Id.* at 27:1–15). And when the Court allowed her an evidentiary hearing on her allegations, she went into hiding. Her conduct shouldn't be rewarded, and it certainly doesn't constitute the good cause she needs to show to prevail on her motion.

An appropriate Order follows.

BY THE COURT:


***/s/ Gerald J. Pappert***

GERALD J. PAPPERT, J.